## EPPING vs. DEVANNY.

J. D. leased to C. E. a lot in the city of Savannah, for the term of three years, at an annual rent of $800, "*upon condition* that the said J. D. should, on or before the 1st day of October next, have the main dwelling house and all the out-houses, (including servants' rooms,) on said lot put in complete tenantable order and condition, and will, on or before the last mentioned day, have the garden lot, in front of said main dwelling house, properly laid out and inclosed with iron railing, *it being understood and agreed that the payment of rent is not to commence until all the said work is finished*, and it being optional with said C. E. to abandon and give up said lease, if the said work shall not be completed within three months after the said first day of October next."

It was further agreed between the parties, that "should the said C. E. be evicted from the premises during the lease, without fault on his part, that the *rent* should cease and determine; and further, that the payment of rent should also cease whenever the premises should become untenantable from fire or any other casualty, without the fault of the said C. E.

*Held*, that under this contract no rent accrued until all the work was completed.

Complaint for rent—in Chatham Superior Court. Tried before Judge FLEMING, at May Term, 1858.

This was an action by John Devanny, administrator of John Doyle, deceased, against Carl Epping, for the recov-

ery of rent for a house and lot in the city of Savannah, for the term of three years, at eight hundred dollars per annum.

The facts of the case are fully set out in the bill of exceptions, which was as follows:

State of Georgia, ⎱ Be it remembered, that in a
Chatham County. ⎰ case pending in the Superior Court of Chatham county, in which John Devanny, administrator of John Doyle, deceased, was plaintiff, and Carl Epping was defendant, a special verdict was rendered, on the twenty-ninth day of May, A. D., as follows:

John Devanny,
Adm'r of John Doyle, ⎱ Chatham Superior Court.
vs. ⎰
Carl Epping.

We, the Jury, find that on the 23d day of July, 1852, the following lease was executed between John Doyle, the intestate of the plaintiff, and the defendant:

State of Georgia, ⎱ This Indenture, made this 23d
City of Savannah. ⎰ day of July, in the year eighteen hundred and fifty-two, between John Doyle, of the city and State aforesaid, of the one part, and Carl Epping, of the same place, of the other part, *Witnesseth*, That the said John Doyle, for and in consideration of the yearly rents and covenants hereinafter mentioned, and reserved on the part and behalf of the said Carl Epping, his executors and administrators and assigns, to be paid, kept and performed, hath demised, set and to farm let, and by these presents doth demise, set and to farm let unto the said Carl Epping, his executors, administrators and assigns, all that lot of ground situate, lying in the city of Savannah, bounded on the north by Harris street, on the east by Lincoln street, on the south by Macon street, and on the west fronting on Lafayette square, said lot being in Lafayette ward, opposite to the residence of Octavus Cohen, Esquire.

Together with all and singular the buildings, out-build-

ings, improvements, rights, privileges, members, premises and appurtenances thereunto belonging, or in anywise appertaining. *To have and to hold* the said lot of ground, and all and singular the houses, out-houses, improvements and premises hereby demised, with the appurtenances, unto the said Carl Epping, his executors, administrators and assigns, from the first day of October next ensuing the date hereof, for and during the term of three years next thence ensuing, and fully to be complete and ended; yielding and paying unto the said John Doyle, his executors and administrators, the yearly rent or sum of eight hundred dollars, in four equal quarterly payments of two hundred dollars each; and the said Carl Epping, for himself, his heirs, executors and administrators, doth covenant, promise and agree to, and with the said John Doyle, his heirs, executors, administrators and assigns, that he, the said Carl Epping, his heirs, executors and administrators, or some of them, shall and will well and truly pay, or cause to be paid, unto the said John Doyle, his heirs, executors, administrators or assigns, the said yearly rent of eight hundred dollars, hereby reserved on the several days and times hereinbefore mentioned and appointed for the payment thereof, according to the true intent and meaning of these presents.

*Upon condition*, nevertheless, that the said John Doyle, his executors, administrators or assigns, shall, on or before the said first day of October next, have the main dwelling house and all the out-houses (including servants' rooms) on said lot put in complete tenantable order and condition, and will, on or before the said last mentioned day, have the garden-lot, in front of said main dwelling house, properly laid out and enclosed with iron railing, it being understood and agreed that the payment of rent is not to commence until all the said work shall be finished; and it being optional with the said Carl Epping, his heirs, executors, administrators or assigns, to abandon and give

up this lease, if the said work shall not be completed within three months after the said first day of October next.

And it is further covenanted and agreed, by and between the parties to these presents, that in case of the eviction or ouster of the said Carl Epping, his heirs, executors, administrators or assigns, from the said lot and premises, or any part thereof, during the said term of three years, without the fault of him or them, then and from thence the said rent shall cease and determine; and further, that the payment of rent shall also cease whenever the said premises shall become untenantable (during the said term) from fire, or tempest, or any casualty beyond the control and without the fault of the said Carl Epping, his heirs, executors, administrators or assigns; and the said John Doyle for himself, his heirs, executors, administrators and assigns, doth covenant, promise, grant, and agree to, and with the said Carl Epping, his executors, administrators and assigns, by these presents, to do and perform all and singular the covenants and things on his, the said John Doyle's part and behalf, to be done and performed as hereinbefore stated; and further, that he and they will, during the term aforesaid, suffer and permit the said Carl Epping, his executors, administrators and assigns, peaceably to have, hold, use, occupy and enjoy the said premises, without the eviction, hindrance or molestation of any person whatsoever, on the regular payment of rent as aforesaid, during the said term, by the said Carl Epping, his heirs, executors, administrators or assigns.

In witness whereof, the said parties have hereto set their hands and seals, the day and year first above written.

JOHN DOYLE, [L.S.]

Witness:                                   CARL EPPING, [L.S.]

JAMES JOHNSTON, }
J. N. HUDTWALCKER. }

And we further find that the defendant occupied the premises during the term therein specified, but that the said John Doyle did not have the main dwelling house and all the out-houses, including servants' rooms on said lot, put in complete tenantable order and condition, nor have the garden lot in front of said main dwelling house properly laid out and enclosed with iron railing, until the 14th day of January, 1854. And we find that the defendant has made the payments and advances claimed in the schedule to his plea attached. Upon this state of facts, if the Court should be of opinion that the rent did not commence to run until the 14th day of January, 1854, when all the conditions were complied with, we find for the defendant, with costs of suit; but if the Court should be of the opinion that the suspension of the rent, though the conditions were not complied with, was limited to the three months specified in the lease, after which it was optional with the defendant to give up the house, then we find for the plaintiff the sum of five hundred and ninety-eight 22-100 dollars, with interest from the 14th day of January, 1854, and costs of suit; and judgment to be entered by either party as of this term.

W. H. DAVIS, Foreman.

29th May, 1858.

The above to be argued before the Judge, upon five days' notice by either party, with leave to allow either party to carry the case to the Supreme Court.

And afterwards, to-wit: on the      day of December, A. D. 1858, after hearing argument at Chambers, upon the points submitted, by said Special Verdict, to the Honorable William B. Fleming, Judge of the Superior Courts of the Eastern District of Georgia, His Honor rendered and filed his decision in writing, in the following words and figures:

Decision of Judge FLEMING:

The question presented for my decision, and which is

made by the special verdict, is : From what time does rent commence under the terms and stipulations of the lease ?

This question arises upon the following clause in the lease :

"Upon condition, nevertheless, that the said John Doyle, his executors, administrators or assigns, shall, on or before the said first day of October next, have the main dwelling house and all the out-houses (including servants' rooms) on said lot put in complete tenantable order and condition, and will, on or before the said last mentioned day, have the garden lot in front of said main dwelling house properly laid out and enclosed with iron railing ; *it being understood and agreed that the payment of rent is not to commence until all the said work shall be finished ; and it being optional with the said Carl Epping, his heirs, executors, administrators or assigns, to abandon and give up this lease, if the said work shall not be completed within three months after the said first day of October next.*"

The maxims for the exposition of contracts are simple and consistent, and well calculated to effect their sole object, namely, *to do justice* to the parties by enforcing a performance of their agreement *according to the sense* in which they mutually understood it at the time it was made.—*Chitty, Jun'r*, 19.

To ascertain the sense in which the parties mutually understood the contract at the time it was made, "the construction must be upon the *entire instrument, and not merely upon disjointed parts.* It is a part of the same rule, that *every portion* of an agreement shall, if possible, be brought forward in collecting the *intention* of the parties." Let us apply these principles to the contract before me. The contract must be construed so as *to do justice* to the parties. How is this justice to be done ? By enforcing the agreement according to *the sense* in which the parties mutually understood it. How shall we arrive at their

understanding of the agreement? By bringing forward every *portion* of the agreement and construing the *entire instrument*, and not confining ourselves to *disjointed parts*.

In this lease, it is stipulated that the premises shall be in complete tenantable order and condition on or before the first of October (then next), and that rent is not to be paid until the work is finished; but it is also stipulated that if the work is not finished within three months after the said first day of October, it shall be optional with Carl Epping to abandon and give up the lease. According to one of the rules laid down, these stipulations must be construed *together*, if we would ascertain the *intention* of the parties. Taking them together, what was the understanding of the parties?

The understanding and intention of the parties, it seems to me, was this: 1st. That the work was to be finished by the first of October. 2d, If not finished by the first of October, rent was not to commence at that time; but if finished within three months from that time, rent was to commence from the time it was finished. 3d, If not finished within three months from that time, it was to be optional with Epping to abandon and give up the lease, which is the same thing as leaving it optional with him whether he will *occupy under the lease*, although the work be unfinished. If he occupies, *he must occupy under the lease.* He may not abandon the lease as to *his own covenants* in it, and adhere to it as to the covenants of Doyle. His covenant is to pay rent, and it is only by performing *his own covenants* that he is in a position to assert his claim for damages against Doyle for not performing his. Will it be said that his covenant in the lease is to pay rent when the *work is finished?* This would be to construe the *whole instrument*, by giving it a meaning which is true only of a disjointed part of it. Take the whole together, and the construction I have given, it seems to me, is the true one. That construction may be generally stated thus: If the

Epping vs. Devanny.

work is finished within three months from the first of October, Epping is bound to pay rent from the time it is finished, *whether he occupies or not.* If it is not finished within three months from the first of October, it is optional with him whether he pays rent—that fact depending upon the exercise of the option given him in the lease to *abandon* it or *occupy* under it.

It is therefore ordered, That judgment be entered upon the verdict for the plaintiff, for the sum therein specified, and as required by said special verdict.

W. B. FLEMING, Judge E. D., Geo.

Whereupon, counsel for the defendant tender this, the said defendant's bill of exceptions, and say—

1st, That the said Judge erred in the construction of the said lease, referred to in his decision.

2d, That said Judge erred in ordering that judgment be entered up for the plaintiff, for the amount named in said special verdict.

HARDEN & LAWTON, for plaintiff in error.

LLOYD & OWENS, contra.

*By the Court.*—LUMPKIN, J., delivering the opinion.

The only question in this case is, can a person protect himself by a special contract?

It is axiomatic that the intention of parties to a contract clearly expressed, is the law of the contract. *Modus et conventio vincuret legem.* Brown's Legal Maxims, 538.— Chitty on Contracts, 87. Here it was not only the expressed intention of the parties, that rent was not to be paid until the premises were finished, but the completion of the work was made a *condition precedent* to the right to demand rent, and therefore no rent was due, or could be recovered, until performance of the condition was shown. 3 Vermont Rep., 339.

The liability to pay rent was not only *"upon condition"* that the house should be "put in complete tenantable order and condition," but it was expressly "understood and agreed that the payment of rent is not to commence until the said work shall be finished." Now, if the agreement to finish the work and to pay rent were mere covenants, as distinguishable from conditions, still the covenant to pay is dependent upon the covenant to finish.—1 Peter's Rep., 455.

It is contended that Epping is bound to pay the rent, because he did not give up the premises at the end of the first three months. This is *non sequitur*.

1st, Because the option to abandon and give up the lease, provided the work was not completed at the end of three months, was personal to Epping, and in no way affected the condition, which the lessor imposed on himself to finish the work; and,

2d, Because the option to give up the lease only gave the lessee power to give up or surrender an estate—a term of years—so as not to be liable for rent at all, though the work should be finished at some subsequent period; and that option having been inserted for his benefit, its non-exercise cannot surely put him in a worse condition than he was before. To save himself from the payment of any rent, he must have given up his term; but it does not thence follow that rent is due before the work is finished.

Suppose the agreement in this case did not make the completion of the work a condition precedent to the payment of rent; and suppose, moreover, that the covenant to pay was not dependent upon the covenant to finish, and that each party were to sue the other for a breach of his covenant, it is not pretended that Doyle could recover of Epping more than the amount of rent which he stipulated to pay. Indeed, counsel do not claim that Epping should be made chargeable for the full consideration for unfinished premises. Would not Epping be entitled to

recover the full amount of rent which he agreed to give for finished premises, as *stipulated damages?* In this view of the case, we think it clear for the plaintiff in error.

The only trouble the Court has had in interpreting this contract, is one not insisted upon by counsel, and it is this: What is meant by the words "that the payment of rent is not to commence until all the said work shall be finished?" Was it the understanding of the parties that no rent was to accrue till then, or only that the payment was suspended? Upon the construction of the language used, taken by itself, we should hold that the former was the true intent of the instrument; but by reference to similar phraseology in the latter part of the lease, all doubts are removed upon the subject. It was agreed between the parties, that in case of eviction or ouster of the lessee, without fault on his part, "then and from thence the said *rent* shall cease and determine." And again, and immediately after, it is provided further "that the *payment of rent* shall also cease whenever said premises shall become untenantable," thus showing that "rent" itself, and "the payment of rent" are employed in the contract as convertible terms.

Our conclusion, therefore, and judgment, is, that no rent accrued, or was owing under this contract, until the premises were completed.

Judgment reversed.